UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DANIEL LOZINSKY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| GEORGIA RESOURCES MGMT., LLC | )  Case No. 1:07CV00377 |
| | ) |
| and | ) |
| | ) |
| GLOBAL METHANE PARTNERS, INC. | ) |
| | ) |
| Defendants. | ) |
| | ) |

**COMBINED ANSWER AND COUNTERCLAIM OF
DEFENDANTS GEORGIA RESOURCES MANAGEMENT, LLC
AND GLOBAL METHANE PARTNERS, INC.**

Defendants, Georgia Resources Management, LLC ("GRM") and Global Methane Partners, Inc. ("GMP") (collectively, the "Defendants"), by and through their undersigned counsel, and pursuant to Rules 8 and 12 of the Federal Rules of Civil Procedure, hereby submit their Answer and Counterclaim to Plaintiff's Complaint and state as follows:

**RESPONSES TO PARAGRAPHS OF THE COMPLAINT**

**PARTIES AND JURISDICTION**

1.  Paragraph 1 of the Complaint sets forth legal contentions relating to jurisdiction and venue to which no averment or answer is required by Defendants. To the extent that Paragraph 1 contains factual allegations, Defendants deny those factual allegations and demand strict proof thereof.

2.  Defendants admit the allegations contained in Paragraph 2 of the Complaint to the extent that Defendant GRM is a limited liability company organized under the laws of the

State of Delaware whose principals are John Onufrak and Herman Hohauser. The remaining allegations state legal contentions and other purported facts concerning entities other than Defendants. Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations contained therein. To the extent that an answer is required, Defendants deny those allegations and demand strict proof thereof.

3.     Defendants admit the allegations contained in Paragraph 3 of the Complaint to the extent that Defendant GMP is a corporation organized under the laws of the Commonwealth of Virginia whose principals are John Onufrak and Herman Hohauser. The remaining allegations state legal contentions and other purported facts concerning entities other than Defendants. Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations contained therein. To the extent that an answer is required, Defendants deny those allegations and demand strict proof thereof.

4.     Paragraph 4 of the Complaint sets forth legal contentions relating to jurisdiction and venue to which no averment or answer is required by Defendants. To the extent that Paragraph 4 contains factual allegations, Defendants deny those factual allegations and demand strict proof thereof.

**FACTS**

5.     Paragraph 5 of the Complaint states legal contentions and other purported facts concerning entities other than Defendants. Defendants without sufficient knowledge or information to form a belief as to the truth of the allegations contained therein. To the extent that an answer is required, Defendants deny those allegations and demand strict proof thereof.

6.      Paragraph 6 of the Complaint states legal contentions and other purported facts concerning entities other than Defendants. Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations contained therein. To the extent that an answer is required, Defendants deny those allegations and demand strict proof thereof.

7.      Defendants admit the allegations contained in Paragraph 7 of the Complaint to the extent that in or about January 2006, Plaintiff and Defendants met in the District of Columbia to discuss investment in the development of commercial projects for the recovery and utilization of Coal Bed Methane/Coal Mine Methane ("CBM/CMM") and the exploration and production of other natural resources in Ukraine and the country of Georgia. Defendants are without sufficient knowledge or information to form a belief as to the truth of the remaining allegations contained therein. To the extent that an answer is required, Defendants deny those allegations and demand strict proof thereof.

8.      Defendants admit the allegations contained in Paragraph 8 of the Complaint to the extent that in or about January 2006, Plaintiff and Defendants met in the District of Columbia to discuss investment in the development of commercial projects for the recovery and utilization of Coal Bed Methane/Coal Mine Methane ("CBM/CMM") and the exploration and production of other natural resources in Ukraine and the country of Georgia. Defendants are without sufficient knowledge or information to form a belief as to the truth of the remaining allegations contained therein. To the extent that an answer is required, Defendants deny those allegations and demand strict proof thereof.

9.      Defendants admit the allegations contained in Paragraph 9 of the Complaint to the extent that in or about January 2006, Plaintiff and Defendants met in the District of

Columbia to discuss investment in the development of commercial projects for the recovery and utilization of Coal Bed Methane/Coal Mine Methane ("CBM/CMM") and the exploration and production of other natural resources in Ukraine and the country of Georgia. Defendants are without sufficient knowledge or information to form a belief as to the truth of the remaining allegations contained therein. To the extent that an answer is required, Defendants deny those allegations and demand strict proof thereof.

10. Defendants admit the allegations contained in Paragraph 10 of the Complaint to the extent that it was explained to Plaintiff that a portion of his investment money would be applied to cover various operating expenses, including travel costs, and direct costs usually associated with financing and implementation of projects in developing countries. The remaining allegations are denied and strict proof thereof is demanded.

11. Defendants admit the allegations contained in Paragraph 11 of the Complaint to the extent that Plaintiff freely and voluntarily wired money to Defendants for the purpose of investing in commercial projects for the recovery and utilization of natural resources in Ukraine and the country of Georgia.

12. Defendants admit the allegations contained in Paragraph 12 of the Complaint to the extent that Plaintiff freely and voluntarily wired the money to Defendants for the purpose of investing in commercial projects for the recovery and utilization of natural resources in Ukraine and the country of Georgia.

13. Defendants admit the allegations contained in Paragraph 13 of the Complaint to the extent that Plaintiff freely and voluntarily wired the money to Defendants for the purpose of investing in commercial projects for the recovery and utilization of natural resources in Ukraine and the country of Georgia.

14. Defendants admit the allegations contained in Paragraph 14 of the Complaint to the extent that Plaintiff freely and voluntarily wired the money to Defendants for the purpose of investing in commercial projects for the recovery and utilization of natural resources in Ukraine and the country of Georgia.

15. Defendants deny the allegations contained in Paragraph 15 of the Complaint and demand strict proof thereof.

16. Defendants admit the allegations contained in Paragraph 16 of the Complaint to the extent that Plaintiff attended an investment forum co-sponsored by The World Bank and the Government of Georgia in New York City during the first week of March 2006.

17. Defendants admit the allegations contained in Paragraph 17 of the Complaint to the extent that Defendants agreed to provide Plaintiff with a 10% interest in Defendant GRM in exchange for an investment of $180,000. The remaining allegations are denied and strict proof thereof is demanded.

18. Defendants deny the allegations contained in Paragraph 18 of the Complaint and demand strict proof thereof.

19. Defendants admit the allegations contained in Paragraph 19 of the Complaint to the extent that Plaintiff was offered a "Convertible Note Purchase Agreement" as one option concerning the repayment of his investment. The remaining allegations are denied and strict proof thereof is demanded.

20. Defendants deny the allegations contained in Paragraph 20 of the Complaint and demand strict proof thereof.

## COUNT I-UNJUST ENRICHMENT

21.     Paragraph 21 of the Complaint incorporates earlier allegations.  Defendants hereby incorporate by reference their responses to those allegations.

22.     Defendants deny the allegations contained in Paragraph 22 of the Complaint and demand strict proof thereof.

23.     Defendants deny the allegations contained in Paragraph 23 of the Complaint and demand strict proof thereof.

24.     Defendants deny the allegations contained in Paragraph 24 of the Complaint and demand strict proof thereof.

## AFFIRMATIVE DEFENSES

1.     Plaintiff's claims are or may be barred, in whole or part, by the doctrine of estoppel in that he freely and voluntarily provided investment money to the Defendants, with knowledge of the risks associated with such investment, and is thereby estopped from pursuing this action.

2.     Plaintiff's claims are or may be barred, in whole or part, by the doctrine of ratification in that he is a sophisticated investor who knew of the intended use of his investment money, never objected to its use by Defendants, and appreciated the risks associated with such use.

3.     Plaintiff's claims are or may be barred, in whole or part, in that he qualifies as an accredited investor under Regulation D, Rules 501 and 506, of the Securities and Exchange Act of 1933 and, therefore, he is estopped to deny that he was not on notice or did not have full appreciation of the risks associated with the use of his investment money.

4.      Plaintiff's claims are or may be barred, in whole or part, by the doctrine of waiver in that he freely and voluntarily invested money in Defendants' commercial investment projects overseas knowing full well that there would be no guarantees as to the amount of his investment return or the timing of such return, if any.

5.      Plaintiff's claims are or may be barred, in whole or part, by his failure to suffer an economic loss.

6.      Plaintiff's claims are or may be barred, in whole or part, by his course of dealing with Defendants.

7.      Plaintiff cannot satisfy his burden of proof with respect to the money damages he seeks to recover.

8.      Defendants affirmatively state that the money damages claimed by Plaintiff in the Complaint and his Prayer for Relief are not due.

9.      Defendants reserve the right to assert additional affirmative defenses, as appropriate.

## COUNTERCLAIM

## FACTS COMMON TO ALL COUNTS

1.      Plaintiff/Counterdefendant Daniel Lozinsky ("Plaintiff") is a resident of the State of New Jersey.

2.      Defendant/Counterclaimant GMP is a corporation organized under the laws of the Commonwealth of Virginia with its principal place of business located in Alexandria, Virginia.

3.      Defendant/Counterclaimant GRM is a limited liability company organized under the laws of the State of Delaware with its principal place of business located in Arlington,

Virginia. Defendant GRM is a distinct corporate entity affiliated with Defendant GMP through common ownership.

4. Defendants GRM and GMP (collectively, "Defendants") operate and conduct business in the District of Columbia.

5. Defendants were formed for the purpose of developing commercial projects for the recovery and utilization of Coal Bed Methane/Coal Mine Methane ("CBM/CMM") and the production of other natural resources in Ukraine and the Country of Georgia.

6. Such projects included, but were not limited to: (i) Coal Mine Methane Demonstration Project ("CMM-1") in Ukraine; (ii) Coal Seam Methane Development Program ("CBM/CMM Pilot Project") in Georgia; (iii) Coal Bed/Coal Mine Methane Program ("Private Sector CBM/CMM Projects") in Kazakhstan; and the (iv) Gorlovskiiy Coke Production Facility Power Plant Project ("Gorlovskiiy Project") in Ukraine (collectively, the "Projects").

7. In or around January 2006, Defendants began looking for investors to provide them with funding to carry on these aforesaid business ventures, including the operating costs necessary to design, build, and operate the Gorlovskiiy Project where Defendants were involved in the investment and development of a 12 MW power plant.

8. At or around this same time period, Plaintiff approached Mr. Ernest Stern to determine whether he knew of any commercial development projects that he could invest in. Plaintiff and Mr. Stern knew each other through Mr. Stern's involvement as outside counsel for Mobilepro, a company where Plaintiff had served as one of its Board of Directors. In addition, Mr. Stern represented Mobilepro in negotiating a $200,000 investment from Plaintiff in or about 2002.

9. In a subsequent telephone conversation, Mr. Stern told Plaintiff that he was corporate counsel for Defendants, that these entities were searching for sophisticated investors to provide capital to subsidize various project activities ongoing in Ukraine and Georgia, and that such investment opportunities might exist for Plaintiff in connection with such projects. Plaintiff expressed an immediate interest in this investment opportunity and requested Mr. Stern to arrange a meeting with the principals of Defendants so he could evaluate the prudence of their proposed investment projects.

10. In or around February 2006, Plaintiff met with the principals of Defendants GMP and GRM, Messrs. John Onufrak and Herman Hohauser, in Washington, D.C., to discuss potential investment opportunities in Ukraine and Georgia. The meeting lasted approximately three (3) hours and Defendants (through Messrs. Onufrak and Hohauser) gave Plaintiff a presentation concerning the status of the development of the Projects occurring in Ukraine, particularly the CMM-I Project and the Gorlovskiiy Project, and the CBM/CMM projects in Georgia, as well their efforts to stimulate economic development in the coal mining industry located in those countries.

11. At the meeting, Defendants (through their principals) explained to Plaintiff the financing needed to fund the Projects, such as the CMM-I Project and Gorlovskiiy Project in Ukraine, and the major operating expenses that needed to be financed to complete the development of such Projects which included, but were not limited to: (i) travel; (ii) language and interpreting services; (iii) technical support services; (iv) professional services; and (v) general administrative expenses.

12. Defendants further explained to Plaintiff the risks associated with the successful completion of the Projects which included, but were not limited to, debt financing

through the Overseas Private Investment Corporation ("OPIC"), political instability, and the arrangement of strategic industry partners both within and outside Ukraine and Georgia. Plaintiff stated that he understood the aforementioned risks and promised to provide Defendants with the financing to subsidize these Projects, particularly the CMM-I Project and the Gorlovskiiy Project in Ukraine.

13.   In reliance upon the pledge received during this meeting, as well as by Plaintiff's own course of dealing thereafter, Defendants engaged multiple professional and technical support services, increased personnel both in Ukraine and in the United States, and spent considerable money on other operating costs, such as travel-related expenses, to further implement and develop the Projects that had been discussed with Plaintiff.

14.   During the days following the meeting, Plaintiff received from Defendants substantial materials and exhibits concerning the Projects under development in Ukraine and Georgia, such as bank financing documentation (including OPIC loan processing), feasibility assessments relating to geology and engineering, business plans, and financial analyses of the projects. Plaintiff reviewed the materials and discussed with Messrs. Onufrak and Hohauser his questions and comments. Plaintiff also informed these principals that he was reviewing the projects with other advisors to assess the risks and opportunities of the prospective investment.

15.   Plaintiff discussed with Messrs. Onufrak and Hohauser his desire for an ownership interest in the companies in exchange for the infusion of a substantial cash investment in these entities. Accordingly, on February 14, 2006, Defendant GMP offered Plaintiff a 3.3% ownership interest in the company in exchange for his investment of $100,000 in GMP, which was needed to fund ongoing projects, such as the CMM-I

Project and the Gorlovskiiy Project, and Defendants' general operating costs. Plaintiff responded to this proposal by requesting a larger percentage ownership of GMP in exchange for a larger investment. Defendants agreed to provide Plaintiff with a 5% interest in GMP for an investment of $165,000.

16.     On February 17, 2006, and February 24, 2006, Plaintiff wired a total of $80,000 into a J.P. Morgan Chase account in New York for the use and benefit of Defendants in connection with those Projects. The account was maintained by Vancom Financial Services, Inc., which is a member of GRM.

17.     Shortly thereafter, Plaintiff and Defendants attended an investors' forum in New York City hosted by The World Bank Group and the Government of Georgia concerning the status of ongoing projects in Georgia. As a result of that forum, Plaintiff promised to provide Defendants with an additional investment of $180,000.

18.     The combined total investment that Plaintiff promised to provide Defendants, to fund the development of the Projects, including the CMM-I Project and the Gorlovskiiy Project, was $345,000.

19.     Following receipt of the initial payment of $80,000, on March 23, 2006, Mr. Onufrak sent Plaintiff a "Summary of Transaction Terms" ("Summary") that reflected the agreement reached between Defendants and Plaintiff regarding his investment in Defendants' business operations necessary to fund the Projects underway in Ukraine and Georgia. Defendants received no indication from Plaintiff that he disagreed with the Summary.

20.     Following his receipt of the Summary, Plaintiff wired $50,000 into Chevy Chase Savings Bank for the account of John Onufrak on March 24, 2006. Again, on April 21,

2006, Plaintiff wired an additional $50,000.00 to Wachovia Bank for the account of Defendant GMP. This money was for the use and benefit of Defendants in connection with the development of the Projects.

21. While Defendants were completing compilation of corporate documents for Plaintiff to review, they received an email message from Plaintiff (through his former counsel) dated June 14, 2006, wherein he demanded an immediate return of his investment equal to $180,000.00.

22. Defendants were shocked by Plaintiff's demand because he had expressed a clear comprehension of the business plans for the Projects, including the structure and financing mechanisms for the Projects, and had promised to invest $345,000.00 in such Projects in order to, among other things, fund their operating costs.

23. Indeed, Plaintiff made four (4) payments on his pledge equal to $180,000.00 leaving a balance of $165,000.00 still unpaid.

24. Defendants have made a demand upon Plaintiff for the unpaid money under his pledge, but the payment of that pledge has been wrongfully denied by Plaintiff. Injustice will result if Plaintiff's pledge is not enforced.

25. As a result of Plaintiff's failure to honor his pledge, Defendants were unable to meet the financial commitments in connection with contracts that they entered into with regard to the Projects, and regarding substantial expenses incurred in reliance upon Plaintiff's pledge.

### COUNT I
**(Promissory Estoppel)**

26. Defendants incorporate and adopt by reference Paragraphs 1 through 25 as if fully set forth herein.

27.     Plaintiff made a clear and definite promise to Defendants to provide them with a cash investment of $345,000.00 in order to finance their Projects ongoing in Ukraine and Georgia.

28.     Plaintiff was told by Defendants that they would use his cash investment to subsidize various operating costs incurred in connection with these Projects, and Plaintiff reasonably knew and expected that his promise to provide such funding would induce Defendants to proceed with the Projects and incur expenses in connection therewith.

29.     Plaintiff's promise induced actual and reasonable action on the part of Defendants in that they incurred operating costs, equal to about $165,000.00, in engaging multiple professional and technical services, hiring translation and interpreting professionals, increasing personnel, and spending considerable money on travel-related expenses in furtherance of the Projects.  These services remain unpaid.

30.     Defendants have made a demand upon Plaintiff to honor his promise to pay the remaining $165,000.00, but Plaintiff has refused and failed to honor such promise.  A resulting detriment to Defendants can only be avoided by the enforcement of Plaintiff's promise to provide such funding.

WHEREFORE, Defendants demand judgment against Plaintiff for compensatory damages in an amount estimated to be at least Two Hundred Thousand Dollars ($200,000), including the unpaid $165,000.00 plus pre- and post-judgment interest and costs, and such other additional relief as the Court deems appropriate.

        Respectfully submitted,

        BREGMAN, BERBERT, SCHWARTZ & GILDAY, LLC


By:    /s/ Edward P. Henneberry
      Edward P. Henneberry, # 15251
      Bregman, Berbert, Schwartz & Gilday, LLC
      7315 Wisconsin Avenue, Suite 800 West
      Bethesda, Maryland 20814
      (301) 656-2707
      *Counsel for Defendants*


## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Combined Answer and Counterclaim of the Defendants was served on this 30th day of January, 2008, upon the following by first-class mail, postage prepaid, and by electronic filing:

      Robert C. Gill
      Saul Ewing, LLP
      2600 Virginia Avenue, N.W.
      Suite 1000
      Washington, D.C. 20037


      /s/ Edward P. Henneberry
      Edward P. Henneberry