UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
**DANIEL LOZINSKY,**                )
                                    )
       **Plaintiff,**       )
                                    )   Civil Action No. 07-377 (JDB)
       v.                  )
                                    )
**GEORGIA RESOURCES**               )
**MANAGEMENT, LLC, et al.,**        )
                                    )
       **Defendants.**      )
_____ )

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

In early 2006, Daniel Lozinsky invested $180,000 in Global Methane Partners, Inc. ("Global Methane") and Georgia Resources Management, LLC ("Georgia Resources"), companies involved in extracting and selling methane in the Ukraine and the Republic of Georgia. Dissatisfied with his investment, Lozinsky asked for his money back. When the two companies refused, Lozinsky sued them for unjust enrichment. Georgia Resources, contending that Lozinsky reneged on a commitment to invest an additional $165,000, has counterclaimed for promissory estoppel. The Court held a two-day bench trial on June 17-18, 2010. Upon consideration of the testimony and exhibits presented at trial and the parties' proposed findings of fact and conclusions of law, and having made credibility findings as necessary to resolve any material discrepancies in the relevant testimony, the Court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT[1]

1. In mid-February 2006, Daniel Lozinsky met with John Onufrak and Herman Hohauser -- Global Methane's managing director and principal investor, respectively -- to discuss a potential investment in that company. See Trial Tr. ("Tr.") 71:15-72:22 (Lozinsky).[2] The three men also discussed a potential investment in Georgia Resources, a company which was to be "created just for the purpose of receiving Mr. Lozinsky's investment." Tr. 270:20-271:1 (Onufrak); see Defs.' Proposed Findings of Fact and Conclusions of Law ("Defs.' Proposed Findings") [Docket Entry 51], at 8-9 ("[Georgia Resources] was intended by Defendants to have been an entity created specifically for the purpose of funding and operating [Global Methane's] businesses in the Republic of Georgia. It was never formally created and does not legally exist as an independent entity.").

2. At this meeting, Onufrak and Hohauser explained to Lozinsky the companies' plans to remove methane gas from coal mines in the Ukraine and the Republic of Georgia, see Tr.75:18-20 (Lozinsky), which the companies would then sell, see Tr. 77:14-21 (Lozinsky). They described projects they intended to develop, including planned pilot

---

[1] The Court's findings of fact are based on the testimony of Daniel Lozinsky, Michael Mannix, Ernest Stern, and John Onufrak, as well as on the exhibits and deposition transcripts introduced at trial. These findings discuss only the evidence necessary to the Court's legal analysis. Where the parties have presented conflicting evidence, the Court will make credibility determinations as relevant to resolve the parties' claims. As a general matter, however, the Court found Mannix credible, Lozinsky credible on most matters, Onufrak not credible on several key issues, and Stern's testimony largely unhelpful, since he recalled few specifics.

[2] Onufrak has worked with Global Methane since the early- to mid-1990s, see Tr. 253:5-25 (Onufrak), although the company was only formally incorporated in "maybe 2003 or '5," Tr. 206:13-14 (Onufrak). Onufrak was working full-time for Global Methane at all times relevant to this action. See Tr. 272:25-273:2 (Onufrak). Hohauser has been Global Methane's primary investor since its inception in the 1990s. See Tr. 254:1-3 (Onufrak).

programs in two Ukrainian coal mines. See Tr. 77:12-13 (Lozinsky); 126:24-127:18 (Lozinsky). They told Lozinsky that, in support of these two anticipated pilot projects, the Overseas Private Investment Corporation ("OPIC"), a U.S.-government agency bank, was prepared to loan $15.3 million to a consortium in which Global Methane had an interest. See Tr. 75:25-76:6 (Lozinsky); 77:6-15 (Lozinsky). And they presented Lozinsky with a Project Information Memorandum that this consortium had prepared for OPIC in support of its loan application. See Defs.' Ex. 2 (Project Information Memorandum); Tr. 136:11-137:25 (Lozinsky); 213:3-9 (Onufrak); 233:9-21 (Onufrak).

3. Onufrak and Hohauser insisted to Lozinsky that they needed an investment right away, as they were just about to leave on a business trip. See Tr. 74:8-12 (Lozinsky). Lozinsky committed to invest at least $40,000. See Tr. 74:13-17 (Lozinsky); 129:5-18 (Lozinsky).

4. A day or two after this initial meeting, Lozinsky wired a $40,000 investment in defendants[3] to Vancom Financial Services, Inc., a company wholly owned by Hohauser. See Tr. 76:19-23 (Lozinsky); 238:23-239:1 (Onufrak); Defs.' Ex. 3 (Wire Transfer Details).

5. One week later, following further conversations with Onufrak and Hohauser, Lozinsky wired Vancom an additional $40,000 investment in defendants. See Tr. 130:12-14 (Lozinsky); 216:3-20 (Onufrak). Lozinsky wired Onufrak another $50,000 payment in

---

[3] The evidence is conflicting as to whether this $40,000 was intended as an investment in Global Methane, Georgia Resources, or both. It is also unclear precisely what percentage of the companies that Onufrak told Lozinsky, and Lozinsky believed, he would receive for his money. The same is true for subsequent investments that Lozinsky made. These issues do not affect the Court's legal analysis, however, which turns on the fact of Lozinsky's investment, and not its terms.

mid-March, see Tr. 90:15-18 (Lozinsky), and a final $50,000 investment in mid-April. See Tr. 76:21 (Lozinsky).

6. All of Lozinsky's $180,000 investment went to Global Methane; none went to Georgia Resources. See Tr. 272:5-11 (Onufrak). Global Methane used this money to pay salaries -- including Onufrak's -- and other expenses. See Tr. 272:12-24 (Onufrak); 292:22-293:19 (Onufrak).

7. At some point during the spring of 2006, Lozinsky committed to invest an additional $165,000 in Georgia Resources. See Tr. 153:5-6 (Lozinsky); 223:25-224:10 (Onufrak). Onufrak testified that, based on this promise, he represented to Georgia's ministries of energy and the environment that the company "would be sufficiently capitalized to go forward" with a methane extraction project in Georgia. Tr. 224:13-12; Tr. 241:20-242:1.

8. Shortly before Lozinsky's final wire transfer in mid-April, Onufrak told him that the OPIC loan -- which Lozinsky had expected to be finalized in the middle of May -- was being delayed. See Tr. 134:22-135:19 (Lozinsky). Lozinsky grew suspicious and hired an attorney, Michael Mannix, to investigate his investment. See Tr. 20:20-22 (Mannix) ("[O]ur initial task was to understand the nature of the investment and the nature of the companies that were involved in those two endeavors."); 44:20-21 (Mannix) ("[Lozinsky] provided me whatever he had, which I think, if I remember at the time, was nothing, and asked me what he should do.").

9. Mannix wrote to Ernest Stern, defendants' attorney who had set up the initial meeting between Lozinsky, Onufrak, and Hohauser. He stated that Lozinsky had hired him "to review his potential investment in [Global Methane and Georgia Resources]," and

explained that his "goal is to determine the circumstances of each company and the terms under which [Lozinsky] might be willing to make an additional investment." Pl.'s Ex. 1 ("Mannix Letter"), at 1.[4] To this end, Mannix asked Stern for a number of documents relating to the two companies, including certificates of incorporation, bylaws, officer and director lists, financial statements, a copy of the OPIC funding application, and "[a]ny other document that is significant to the business." See id. at 1-2.

10. Mannix followed up on this request with several phone calls. See Tr. 22:22-23:7 ("I spoke with Ernest Stern on a number of occasions, and I'm going to call it maybe three or four occasions as a minimum . . . with a view towards attempting to understand the transaction and get documents."). He also sent Stern emails. In one he wrote, "Ernest, Can you please let me know how our document request is coming? As you know, we have not received anything yet and I will not be able to help Daniel in his decision making until we receive the requested information." See Pl.'s Ex. 7 (May 19, 2006 email from Mannix to Stern).

11. Mannix testified that, in response to his requests, defendants provided "dribs and drabs of some documents that were unexecuted or were in draft form or maybe didn't reflect what [Lozinsky] was telling [Mannix] the transaction was." Tr. 21:14-20. Mannix stated that he "had a number of pointed phone calls with [Stern] where [he] was very clear about the

---

[4] Although Mannix's letter to Stern is dated February 23, 2006, the Court finds that it was instead sent in April 2006. Mannix only began working for Lozinsky around April. See Tr. 35:22-36:4-9 (Mannix). And both Mannix and Lozinsky believed the date on the letter to be a typo. See Tr. 25:11-25 (Mannix); 38:19-22 (Mannix); 81:6-16 (Lozinsky) ("Q: Okay. So do you think the true date is later in time than February 23? A: Yeah. I think end of April or something like that.").

fact that [he] wasn't seeing anything that was representative of what had already happened in the transaction in an executed, complete, documented history of the transaction." Tr. 49:9-17; see also Tr. 33:17-34:18 (Mannix). "[C]ertainly there was not a significant response at any time to [his] request." Tr. 21:19-20 (Mannix); see also Tr. 21:21-23 (Mannix); 24:5-24 (Mannix).

Defendants dispute Mannix's testimony concerning their production of documents to Lozinsky. Specifically, defendants rely on a July 2006 email, wherein Stern wrote to Mannix that defendants had previously provided "convertible notes to reflect Mr. Lozinsky's promised investment [in defendants], a Convertible Note Purchase Agreement between our clients, the certified copy of [Global Methane's] certificate of incorporation, the filed Articles of Organization of [Georgia Resources], the Bylaws of [Global Methane], the Operating Agreement of [Georgia Resources] and [a] stock certificate for 750 shares of [Global Methane]." Pl.'s Ex. 11 (July 10, 2006 email from Stern to Mannix), at 1; see also Tr. 190:18-191:8 (Stern); Pl.'s Ex. 7 (May 19, 2006 email from Stern to Mannix) (stating that Georgia Resources's operating agreement had been attached to a prior email). Onufrak also testified that documents were provided in response to Mannix's request, although he could not remember any specifics. See Tr. 267:9-269:7.

The Court accepts Mannix's description of defendants' document production. For one, Mannix -- whom the Court found to be a credible witness -- explicitly disputed Stern's July 10 email. See Tr. 28:4-8 (Mannix) ("Q: Now, at the time that you received this [July 10, 2006] email, had you ever received any documentation in response to your letter . . . ? A: Not that I can recall, and certainly if I did receive anything, it wasn't

-6-

substantial and it wasn't executed."); see also Tr. 31:10-14 (Mannix) (all the documents he received "were either unresponsive or didn't reflect the transaction as much as they reflected a future transaction, or were an attempt to document what had previously been done with the money. There was nothing that was executed."). Moreover, Mannix's testimony was corroborated by the evidence at trial: of the documents referenced in Stern's July 10 email, only two were produced at trial -- the stock certificate and the Convertible Note Purchase Agreement -- and neither was executed. Nor did defendants introduce any other documents allegedly provided to Mannix. Finally, the Court discounts the representations made in Stern's July 10 email. That email states that defendants had previously disclosed to Lozinsky "the filed Articles of Organization of [Georgia Resources]" and "the Operating Agreement of [Georgia Resources]." But Onfurak testified that Georgia Resources was never formally incorporated, and that he was not aware of the company having any corporate documents. See Tr. 271:7-17. On the whole, then, Mannix and Lozinsky are credible on the document production issue, while Onufrak and, where material, Stern are not.[5]

12. Neither Global Methane nor Georgia Resources ever memorialized Lozinsky's investment or transferred to him any interest in the companies. Defendants' evidence to the contrary is simply not credible. Defendants have offered the above-mentioned Convertible Note Purchase Agreement and stock certificate as evidence that they did memorialize Lozinsky's investment. But the Convertible Note Purchase Agreement is a draft

---

[5] Stern's testimony regarding the provision of due diligence documents was generally unhelpful. He consistently failed to recall what, if any, documents were provided in response to Mannix's requests. See, e.g., Tr. 161:3-8; 171:3-11; 173:11-14; 179:19-25.

agreement regarding a future investment, not the money Lozinsky had already provided. See Defs.' Ex. 8 (Convertible Note Purchase Agreement); Tr. 186:3-9 (Stern). And the stock certificate, which ostensibly reflects the issuance of 750 shares of Global Methane to Lozinsky, is neither signed nor executed. Indeed, Onufrak, who agreed that he was "the principal contact between [Global Methane] and Mr. Lozinsky," Tr. 284:13-15, testified that prior to trial he was not aware of Lozinsky ever receiving any stock for his investment, see Tr. 279:23-280:8.

The Court doubts that the stock certificate reflects any ownership by Lozinsky in Global Methane for an additional reason. At trial, defendants produced an undated stock ledger reflecting that Lozinsky's 750 shares represented 5 percent of Global Methane's outstanding stock. See Defs.' Ex. 7 (Stock Ledger). But the ledger indicates that, on the same day that Global Methane issued Lozinsky his 750 shares, it also issued 13,950 shares to Vancom Financial Services. See id.; see also Defs.' Ex. 6 (unsigned, unexecuted stock certificate for Vancom). The Court finds this suspicious. Vancom is the majority owner of Global Methane and has been since "substantially before May of 2006." Tr. 196:5-9 (Stern); see also Tr. 238:14-22 (Onufrak). And while Global Methane had issued stock as early as 2003, it had never previously issued any to Vancom. See Tr. 202:4-9 (Stern); Stock Ledger. It is odd, then, that years after Vancom's initial investment, Global Methane only issued it stock -- in an amount representing over 90 percent of Global Methane's shares -- on the same date that it allegedly issued a stock certificate to Lozinsky.

13. Towards the end of May, Lozinsky asked Onufrak to return his $180,000. See Tr. 98:19-

99:2 (Lozinsky). According to Lozinsky, Onufrak agreed to repay him. See Tr. 99:9-10 ("Okay. We'll put it into action. That was his words [sic]."). Onufrak denied ever making such a promise. See Tr. 229:15-16 ("Q: Did you promise him he could have his money back?  A: No.").

**CONCLUSIONS OF LAW**

**I.      Lozinsky's claim for unjust enrichment**

"Unjust enrichment occurs when a person retains a benefit (usually money) which in justice and equity belongs to another." 4934, Inc. v. Dist. of Columbia Dep't of Emp't Servs., 605 A.2d 50, 55 (D.C. 1992). "'In such a case, the recipient of the benefit has a duty to make restitution to the other person if the circumstances of its receipt or retention are such that, as between the two persons, it is unjust for the recipient to retain it.'" Pearline Peart v. Dist. of Columbia Hous. Auth., 972 A.2d 810, 813 (D.C. 2009) (quoting 4934, Inc., 605 A.2d at 55-56). To establish a cause of action for unjust enrichment, a plaintiff must show that "(1) the plaintiff conferred a benefit on the defendant; (2) the defendant retains the benefit; and (3) under the circumstances, the defendant's retention of the benefit is unjust." Id. "A claim of unjust enrichment does not require fault on the part of the recipient of the benefit." 4934, Inc., 605 A.2d at 56. The Court evaluates Lozinsky's unjust enrichment claim under the preponderance of the evidence standard. See In re Acequia, Inc., 34 F.3d 800, 815 (9th Cir. 1994).[6]

---

[6] As an initial matter, defendants argue that "a contract existed -- unclear or not as to its specific requirements -- and as such it is impossible, as a matter of law, for Plaintiff to sustain a theory of unjust enrichment." Defs.' Proposed Findings, at 13-14; see Ellipso, Inc. v. Mann, 460 F. Supp. 2d 99, 104 (D.D.C. 2006) (unjust enrichment unavailable "when there is an actual contract between the parties"). Their argument comes too late. Defendants filed both a motion to dismiss and a motion for summary judgment in this case, but never suggested that a contract
(continued...)

The parties agree that Global Methane accepted $180,000 from Lozinsky, and that it retains that sum.[7] The parties dispute, of course, whether it is unjust for Global Methane to keep Lozinsky's money. According to Global Methane, Lozinsky "entered into a transaction with the intention and mutual understanding that he was investing in Defendant [Global Methane]," and the company "reasonably and properly treated the monies as an equity investment." Defs.' Proposed Findings at 10, 12. Lozinsky maintains, on the other hand, that Global Methane gave Lozinsky "nothing of value in return" for his investment. Pl.'s Proposed Findings of Fact and Conclusions of Law [Docket Entry 54], at 9.

Lozinsky has established, by a preponderance of the evidence, that it would be unjust for Global Methane to retain his investment. Lozinsky invested money in Global Methane in order

---

[6](...continued)
existed to preclude Lozinsky's cause of action. Nor did defendants move for judgment on this ground prior to or at trial. Instead, defendants raised this legal theory for the first time in their post-trial proposed findings of fact and conclusions of law -- a document to which Lozinsky had no opportunity to respond. See Keyes v. Dist. of Columbia, 372 F.3d 434, 438 (D.C. Cir. 2004) ("Under the circumstances, where the [defendant] has been denied an opportunity to respond in its brief, the court declines to consider the issue."); see also Pantazes v. Jackson, 366 F. Supp. 2d 57, 67 n.2 (D.D.C. 2005) ("Plaintiff has had no opportunity to respond to this argument, and the Court therefore may not grant summary judgment on this basis.").

In any event, it is not at all clear that defendants have met their burden to establish that an enforceable contract exists between the parties. See Jack Baker, Inc. v. Office Space Dev. Corp., 664 A.2d 1236, 1238 (D.C. 1995) ("[T]he party asserting the existence of a contract has the burden of proof on that issue."). The testimony as to whether the parties agreed to the material terms of Lozinsky's investment -- and what those terms are -- was often unclear and ambiguous, and neither Lozinsky nor Onufrak was particularly credible on this point. See EastBanc, Inc. v. Georgetown Park Assocs. II, L.P., 940 A.2d 996, 1002 (D.C. 2008) (for a contract to be enforceable, its terms must be "clear enough for the court to determine whether a breach has occurred and to identify an appropriate remedy").

[7] As noted above, Onufrak's undisputed testimony is that Lozinsky's investment went entirely to Global Methane, and not to Georgia Resources. Accordingly, Lozinsky did not confer a benefit on Georgia Resources, and the Court will award judgment to Georgia Resources on Lozinsky's unjust enrichment claim.

-10-

to secure a stake in the company. But the evidence indicates that Global Methane never provided Lozinsky with any documents evidencing such a stake. Global Methane never gave him a written stock purchase agreement, or a signed, executed stock certificate. Nor has Global Methane identified other executed documents that might evidence Lozinsky's ownership, such as an operating agreement. See Tr. 49:21-24 (Mannix) ("[I]f [Lozinsky] is attempting to secure an equity interest in the company, it would be in the form of being a party to the operating agreement. It would evidence his ownership."). Indeed, Mannix credibly testified that despite his repeated requests, neither Global Methane nor Stern provided him with "anything that was representative of what had already happened in the transaction in an executed, complete, documented history of the transaction." Tr. 49:9-17.

There is also no evidence that Global Methane actually transferred any interest to Lozinsky. Not only are there no documents memorializing or reflecting such a transfer, but in the four years since Lozinsky asked for his money back, Global Methane -- which is still operating, see Tr. 257:21-258:5 (Onufrak) (Global Methane recently hired two independent consultants) -- has not treated Lozinsky as an owner of the company in any way. See Deposition of John Onufrak [Docket Entry 55], at 52:20-53:3 ("Q: Now, my understanding is that Mr. Lozinsky never received any shares of stock or any membership interest or anything else in either Global Methane Partners or Georgia Resources Management; is that correct? A: To my knowledge that's correct."); see also Tr. 279:23-281:13 (Onufrak). The evidence reveals, then, that Global Methane accepted and used Lozinsky's money under the guise of an investment, but provided Lozinsky with nothing in return. Under these circumstances, it would be unjust for Global Methane to retain Lozinsky's investment.

The absence of documents in the record that would establish that Global Methane has ever engaged in business operations further confirms the Court's conclusion that Lozinsky is entitled to his money back. Mannix repeatedly sought documents relating to Global Methane and its operations, but never received anything executed. And except for the stock ledger discussed above, Global Methane did not introduce any documents at trial -- executed or not -- detailing its corporate or ownership structure, business relationships, financial records, or anything else that might reveal the nature of the company. Nor did Global Methane offer documents -- such as receipts, bank records, or credit card statements -- indicating how Lozinsky's investment was used for the company's benefit. Indeed, even the Project Information Memorandum submitted to OPIC and given to Lozinsky does not mention Global Methane. Rather, this memorandum details projects that are sponsored in part by Ukraine Methane Partners, LLC, a group that Onufrak (without supporting documentation) testified includes Global Methane. See Tr. 231:17-232:10. This complete absence of corporate documents is conspicuous -- especially given the amount of testimony both parties elicited as to whether defendants provided such documents to Lozinsky -- and further supports the Court's determination that Global Methane has been unjustly enriched.[8]

## II. Georgia Resources's counterclaim for promissory estoppel

According to Georgia Resources, it reasonably and detrimentally relied on Lozinsky's promise to invest an additional $165,000, and it asks for Lozinsky to be held to that

---

[8] Defendants suggest that "Lozinsky is a sophisticated investor" who entered into this transaction with his eyes open. Defs.' Proposed Findings at 11. Lozinsky's sophistication does not alter the Court's analysis, however: it is unjust for a company to accept money from any investor -- no matter how experienced -- without providing something in return.

commitment.[9]  "In order to find a party liable on a theory of promissory estoppel, there must be evidence of a promise, the promise must reasonably induce reliance upon it, and the promise must be relied upon to the detriment of the promisee."  Simard v. Resolution Trust Corp., 639 A.2d 540, 552 (D.C. 1994).  Also, "the theory may be invoked only when injustice otherwise would not be avoidable."  Kauffman v. Int'l Bhd. of Teamsters, 950 A.2d 44, 49 n.7 (D.C. 2008) (internal quotation marks omitted).

The Court need not linger on Georgia Resources's counterclaim.  Georgia Resources "was intended by Defendants to have been an entity created specifically for the purpose of funding and operating [Global Methane's] businesses in the Republic of Georgia.  It was never formally created and does not legally exist as an independent entity."  Defs.' Proposed Findings at 8-9.  And the Court has concluded that it would be unjust for Global Methane to retain Lozinsky's money, as it never memorialized Lozinsky's investment, and indeed there is no documentary evidence that it has ever engaged in business operations.  Given that Georgia Resources is a non-existent offshoot of Global Methane, then, there is no injustice in permitting Lozinsky to escape from his promised investment.  Indeed, under these circumstances injustice would result if Lozinsky were required to invest more money in defendants.[10]

## CONCLUSION

---

[9] Both Global Methane and Georgia Resources initially brought this counterclaim.  See Defs.' Answer [Docket Entry 12], ¶¶ 26-30.  Defendants' proposed findings make clear, however, that only Georgia Resources is currently prosecuting it.  See Defs.' Proposed Findings at 14-18.

[10] At trial, Lozinsky moved to dismiss this counterclaim on the grounds that Georgia Resources, as a non-existing corporate entity, could not bring it.  See Tr. 309:6-310:4.  That may well be a sound argument.  But given the Court's conclusion that the counterclaim fails on the merits, the Court need not resolve it.

For the reasons detailed above, the Court will award Lozinsky judgment against Global Methane in the amount of $180,000. It will award Georgia Resources judgment on Lozinsky's unjust enrichment claim. And it will award Lozinsky judgment on Georgia Resources's counterclaim for promissory estoppel. A separate Order accompanies these Findings of Fact and Conclusions of Law.

/s/
JOHN D. BATES
United States District Judge

Dated: September 3, 2010